**516**

the time when the plaintiff was in the service of the United States.

The Compensation Act was intended to cover all employees of the United States. In the case of Johansen v. United States, 343 U.S. 427, 439, 72 S.Ct. 849, 96 L.Ed. 1051, the Court wrote:

"The Federal Employees Compensation Act, 5 U.S.C. § 751 et seq., 5 U.S.C.A. § 751 et seq., was enacted to provide for injuries to Government employees in the performance of their duties. It covers all employees."

The motion is granted.

## CONSOLIDATED LAUNDRIES CORP.
### v.
### UNITED STATES.
#### No. 48802.

United States Court of Claims.
June 8, 1954.

Jacob J. Rudner, New York City, for plaintiff. Jacob Landau and Myron P. Gordon, New York City, were on the briefs.

Carl Eardley, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

The defendant on March 15, 1943, leased from plaintiff the Mayflower Laundry in New York City and used the laundry through April 30, 1946.

Plaintiff sues for alleged damage to stored equipment, the alleged cost of relocating the stored equipment, and alleged damage to the equipment in use. The total amount claimed is $169,668.45.

Defendant denies all liability and asserts that in no event should plaintiff be permitted to recover in excess of $994.50, which is the value of certain items of machinery which apparently were lost during the period of the storage and lease operation.

The property was what is known in the trade as a family-style laundry and had been in operation for a considerable period. The defendant leased the plant including the equipment. It was stipulated in the lease contract that the Government should have the right during the existence of the lease to make alterations, attach fixtures, erect additions, structures or signs in or upon the leased premises, and that at the end of the lease period the Government should have the right to remove the additional fixtures which it may have installed.

The reason for a provision of this type was that the Government desired to use the laundry to meet military requirements. This made it necessary to change from a family to a bulk or commercial type laundry. The plaintiff had operated the laundry on a single-shift basis. The defendant used three shifts and operated the laundry 24 hours daily.

Attached to the lease contract was an inventory prepared jointly by plaintiff and defendant describing the condition of each piece of machinery and equipment included in the list. There were notations of "good", "fair" or "poor" in connection with these items. "Poor" meant less than 60 percent of normal efficiency; "good" and "fair" meant not exceeding 85 and 75 percent of normal efficiency, respectively. Many of the items, being of obsolete design or primarily suitable for a family-style laundry were of no utility in defendant's contemplated use of the plant. It therefore removed much of this machinery from the plant and stored it; other parts of the machinery were relocated within the plant. Some of the wooden accessories such as tables, bins and shelving were torn down and some of the lumber used in making sorting bins of different specifications.

The materials that were stored consisted primarily of manufactured piping, shirt and collar dryhouses, blanket and curtain dryers, shirt and garment presses, starching machines, collar machines, roller conveyors and numerous wooden accessories such as tables, bins and racks.

The plaintiff contends that in the remodeling process the defendant destroyed much property, injured other items of machinery, neglected the machinery while in storage, permitting it to rust and deteriorate, and handled the entire matter in such a way as to make the removed machinery practically useless, and that it abused the machinery that remained in such a fashion as to cause great damage thereto, all of which defendant categorically denies. Much of the testimony is conflicting, and to some extent confusing, but in going over the entire record certain facts emerge rather clearly which bear upon the numerous issues made by the plaintiff.

Before discussing the various issues that have been raised it will help to clarify these issues by calling attention to the fact that on January 19, 1947, the plaintiff and defendant executed a supplemental agreement by the terms of which defendant waived its right to remove the machinery which it had installed at its own expense in changing from a family to a commercial type laundry and which under the terms of the original lease it had a right to remove, and in return for the title to such property the plaintiff released the defendant from any and all claims or liability arising out of the entire transaction, except that the plaintiff reserved any claims resulting from damage to lessor's machinery either by the removal of the machinery or any damage to the machinery for which the defendant might be legally liable.

This supplemental agreement narrows the issues considerably, since it removed from the items claimed any damage that may have been done to the plant or building.

There was considerable damage to the property that was removed

during the period that it was in storage. The nature of this damage is summarized by the trial commissioner in finding 8, which we have adopted. The commissioner has concluded from the evidence presented that the damage over and above reasonable and ordinary wear and tear to plaintiff's machinery and equipment, not including the washing machines, extractors and panel control board caused by defendant's use or storage of the machinery, was $7,401. The plaintiff complains that the total damage on this item should have been more than $53,000, while the defendant claims the damage was altogether negligible. Our commissioner saw the witnesses face to face, and we are constrained to adopt his findings as they are reasonably supported by the evidence. We find that the value of the machinery was reduced by $7,401 on account of the excess damage above that attributable to ordinary wear and tear.

There were certain items of missing machinery and equipment, the reasonable market value of which is $994.50.

■ The reasonable cost of relocating the equipment at the original location at the termination of the lease would have been $5,550, including the reinstallation of manufactured piping and electric connections which defendant had disrupted and removed. The plaintiff claims that it is entitled to recover this amount; in fact, the plaintiff asserts that the amount should be larger. It is true that the defendant under the terms of the original lease agreement obligated itself to replace the machinery that had been removed as nearly as possible in the exact location at which it was originally found. This was not done.

There is no doubt plaintiff would be entitled to recover this amount according to the terms of the original lease contract. However, the undisputed evidence shows that defendant installed a large amount of new machinery in converting the plant; that it had the right under the original lease to remove this machinery at the end of the lease. As a con-sideration for the waiving of all claims against it with the exception of the damage caused to the machinery, the defendant transferred the title and ownership of all the new machinery which it had installed to the plaintiff.

Undoubtedly the plaintiff would have a right to the cost of relocating the old machinery or accepting the title and ownership of the new machinery that had been installed. It had what is termed in baseball parlance a fielder's choice. It chose to accept the new machinery. Having done so it waived the other claims except the additional damage to the machinery. As a matter of fact, if plaintiff had insisted on the defendant's carrying out its original obligation it would have been necessary to remove a large part of the newly installed machinery which would not only have been expensive, but would have interrupted the operation of the plant. Plaintiff saw fit at the end of the lease to continue operations not as a family-type but as a commercial-type laundry. Having made its choice it certainly should not have the advantages of both without the obligations of either.

Plaintiff would be entitled to the cost of restoring the wired-in enclosure which defendant removed from the garage and in which a mechanics' shop was located but for the fact that, as we construe the supplemental agreement, this obligation was settled in the transfer of many thousands of dollars' worth of property to the plaintiff under that agreement.

The plaintiff also claims damages to the washing machines which were shown by the attached inventory to be in fair condition, with certain exceptions. However, the evidence shows rather clearly that the defendant spent some $18,000 in conditioning the washing machines and extractors, and that it employed a maintenance crew at all times during the lease period. We adopt the commissioner's finding that the washing machines were returned by the defendant to the plaintiff at the termination of the lease in at least as good condition as they were at the beginning of the lease, reasonable

and ordinary wear and tear excepted. We make the same finding in connection with the extractors which plaintiff claims were damaged to the extent of several thousand dollars.

There was some damage to the automatic panel control board which is an electric apparatus that starts and stops the washing machine motors and also causes the cylinders in the machines to reverse direction periodically during the washing cycle. One such board attached to the building served all the washers on the washroom floor of the plant. Defendant's continuous operation of the plant on a 2- and 3-shift basis caused abnormal depreciation on the board's contact points and resisters and further damage was occasioned on account of defendant's inability to secure replacements for badly worn parts. This in addition to the overloading of the washing machines caused permanent damage to the board. Our commissioner has found from the evidence that the amount of this damage above normal wear is the sum of $2,500, this being the amount necessary to compensate for the damage in excess of reasonable and ordinary wear and tear. While the evidence is not clear as to how much of the damage was due to ordinary wear and tear and how much to excess above ordinary wear and tear, we would be inclined to find this item for the plaintiff but for the fact that the supplemental agreement by virtue of the transfer of title to the machinery stipulated that all claims as to damages to the property and plant were discharged. There might be some doubt as to whether this item, attached as it was to the building, became a part of the building or whether it was included in the machinery items excepted from the release if we look at the wording of the exception alone. However, if we examine the entire document we find in the preliminary part of the document the following:

"Whereas, the lessor is willing in lieu of the performance of physical restoration of the entire building on said demised premises, together with restoration of elevators and *main electric panel board* located therein to accept said government-owned property and improvements \* \*." [Emphasis supplied.]

Thus the main electric panel board was specifically included as one of the items damages to which were released and discharged as a part of the consideration for the transfer of the title to the government property.

The plaintiff attempts to escape the effect of this specific inclusion by stating that that provision referred to the separate small board that controlled the elevators. We cannot accept this interpretation. Undoubtedly the panel board that controlled the 21 washing machines and extractors and other washing machinery was the main electric panel board. It was clearly the main board, the one to which most of the damage was done and about which most of the evidence on that point was taken; in fact, little damage was shown to have been done to the small panel board. The plaintiff undertakes to construe the release as applying to the panel board attached to the elevators because the term panel board is used in the same clause in which elevators are mentioned. To interpret the language as plaintiff would have us interpret it would require a finding that the smaller panel board was located in the elevators. When the entire paragraph is read as a whole, it becomes clear that the reference is to the main electric panel board located within the building. That seems to us to be the proper construction of the language. For this reason we hold that the damage to the main electric panel board was included in the terms of the release.

Plaintiff is entitled to recover the sum of $8,395.50.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.